BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN re LAUGHLIN PRODUCTS, INC. PATENT LITIGATION | : : : : | MDL Docket No. |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER OF THE LAUGHLIN PRODUCTS, INC. PATENT ACTIONS PURSUANT TO 28 U.S.C. § 1407**

**I.     PRELIMINARY STATEMENT**

Laughlin Products, Inc. ("LPI") has filed identical suits in seven (7) United States District Courts against salons owned and operated by Hollywood Tanning Systems, Inc. ("HTS") and by 45 HTS franchisees (the "Laughlin suits").[1] The Laughlin suits each allege that HTS and its named franchisees have infringed U.S. Patent No. 5,922,333 ("the '333 Patent").[2] HTS and its franchisees have yet to formally respond to the allegations in the Laughlin suits, but intend to respond to each and every Complaint in the Laughlin suits with an identical declaration that the '333 Patent is not infringed by the HTS method, and that the '333 Patent is invalid.

---

[1] The Laughlin suits are pending in the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Eastern District of New York, the United States District Court for the District of Delaware, the United States District Court for the District of Maryland, the United States District Court for the Eastern District of Virginia, the United States District Court for the Southern District of Florida, and the United States District Court for the Northern District of Georgia.  HTS owns and operates a single salon named in the Florida suit.  All of the remaining salons are owned and operated by HTS franchisees.

[2] The Laughlin suits also include a count of Common Law Unfair Competition, alleging unfair competition, palming off, unjust enrichment, and misappropriation.  The Common Law Unfair Competition count arises out of the HTS method and HTS system.

112139.00601/30214631v2

LPI did not, however, file suit against HTS and its franchisees in New Jersey, which is where HTS and the bulk of all HTS salons are located. Accordingly, HTS has since filed a declaratory judgment action in the United States District Court for the District of New Jersey seeking, among other things, a declaration of non-infringement and invalidity (the "HTS suit").[3]

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

HTS manufactures and sells its franchisees a system for applying self-tanning solutions onto the human body, which is marketed under the name "HT-9 Instant Tan" (the "HTS system"). In addition to acting as a franchisor, HTS also owns certain salons which use the HTS system. LPI claims that the use of the HTS system, by HTS and the HTS franchisees at the salons, infringes the '333 patent (the "HTS method").

Defendants in the Laughlin suits are franchisees of HTS and, in the Florida suit, HTS, improperly pled as Hollywood Tans, Inc., in its capacity as operator of certain salons, not as franchisor. HTS has agreed to defend and indemnify all of its franchisees with regard to the Laughlin suits. The franchisees of HTS have agreed to permit HTS to control the defense of the Laughlin suits. The same law firm will be representing HTS and its franchisees in all eight district court actions.

Each of the eight cases, namely the seven Laughlin suits and the single HTS suit, will address many identical technical, factual and legal issues related to the liability of the HTS franchisees, namely the invalidity and non-infringement of the '333 Patent. Each of the eight cases will likely require the same discovery, including documents from LPI and HTS, responses

---

[3]  HTS also raises claims of defamation, disparagement, unfair competition and tortious interference with prospective economic advantage against LPI and Dr. Thomas Laughlin. These claims all arise out of the Laughlin suits, the '333 patent and LPI and Dr. Laughlin's publication of the suits and the '333 patent. HTS and its named franchisees also intend to assert these claims in the Laughlin suits.

2

to written discovery, and the deposition of witnesses from both entities. Each case would also require the same claim construction process and <u>Markman</u> hearing, as well as the filing of extensive summary judgment motions. HTS's documents and its principal witnesses are all located in New Jersey.

The Laughlin suits are less than about 2 months old, and at the time of the filing of this Motion, none of the actions have proceeded beyond the filing of a Complaint. Responses to the Laughlin suits are not due until August 29, 2002. At that time, HTS and the named franchisees intend to move to stay the District Court actions pending a decision from this Judicial Panel on Multi-District Litigation (the "Panel").

There are nearly 140 "Hollywood Tans" salons in the United States, including New Jersey, Pennsylvania, Delaware, New York, Connecticut, Maryland, Virginia, Georgia and Florida. New Jersey and Connecticut are the only states where there are salons that LPI has not filed an action against HTS and its franchisees. Of these nearly 140 HT salons, approximately 100 salons (or about 70%) have the HTS system and use the HT method. There are 3 HTS franchisee salons operating in Connecticut, and 53 HTS franchisee salons operating in New Jersey. In the states where LPI has filed actions, not all of HTS's franchisees have been named, nor has HTS been named in every action. <u>See</u> Declaration of Ralph Venuto, Sr.

### III.  <u>LEGAL ARGUMENT</u>

    A.    **The Laughlin Suits And The HTS Suit Should Be Transferred To A Single Court.**

Patent litigation of this type is well-suited to consolidation before a multi-district panel. Indeed, the Panel on numerous occasions has ordered the consolidation of patent cases to determine the question of patent invalidity and infringement. <u>See</u> <u>In re Mirtazapine Patent Litigation</u>, 199 F. Supp. 2d 1380 (J.P.M.L. 2002) (Panel ordered the consolidation of 6 actions

3

that concerned the validity and infringement of a drug patent); In re Cygnus Telecommunications Technologies, LLC Patent Litigation, 177 F. Supp. 2d 1375 (J.P.M.L. 2001) (Panel consolidated 5 actions pending in multiple districts due to the commonality of factual and legal questions on issues such as patent validity); In re Buspirone Patent Litigation, 176 F. Supp.2d 1374, 1375 (J.P.M.L. 2001) (Panel concluded that there were common questions of fact concerning patent validity and infringement that warranted transfer); see also In re Embro Patent Infringement Litigation, 328 F. Supp. 507, 508 (J.P.M.L. 1971); In re Sundstrand Data Control, Inc. Patent Litigation, 443 F. Supp. 1019, 1020 (J.P.M.L. 1978).

In evaluating a motion to transfer under 28 U.S.C. § 1407, the Panel must examine the following factors: (1) the existence of common issues of fact; (2) whether centralization will serve the convenience of the parties and witnesses; and (3) whether centralization will promote the just and efficient conduct of the litigation. In re Mirtazapine Patent Litigation, 199 F. Supp.2d 1380, 1381 (J.P.M.L. 2002). In application by the Panel, these factors tend to overlap. Under any analysis, the above factors support the transfer of this litigation into a single district court for pre-trial discovery and management.

1. **The Laughlin Suits And The HTS Suit Involve Common Questions Of Fact.**

All of the eight actions involve a single patent, the '333 Patent, and identical questions relating to the non-infringement and invalidity of that patent. Specifically, there are common issues of fact in all of the actions as to whether the HTS method utilized by the HTS salons infringes upon the '333 Patent and whether the '333 Patent is valid. See In re Aimster Copyright Litigation, 177 F. Supp.2d 1380, 1381 (J.P.M.L. 2001).

To resolve the infringement and validity questions, the eight district courts would have to confront the same complex factual and legal issues relating to the prior art as it relates to the '333

Patent, including: the prosecution file history at the U.S. Patent and Trademark Office leading to the issuance of the '333 Patent; the interpretation of the self-tanning method claims described in the '333 Patent; and the method utilized by HTS. See In re Cygnus Telecommunications Technologies, LLC Patent Litigation, 177 F. Supp. 2d 1375 (J.P.M.L. 2001) (Panel found that allegations involved the same patent and could be "expected to share factual and legal questions concerning such matters as patent validity, prior art, obviousness and interpretation of the claims of the patent").

Indeed, since the Laughlin suits are virtually identical, any factual finding or conclusion of law would be applicable to all eight pending actions. In this case, the distinctions among the Laughlin suits only arise out of the users of the HTS method, the individual franchisees, not from any differences in the HTS method, which is the subject of and focus of the actions.

### 2. Centralization Will Serve The Convenience Of The Parties And Witnesses.

Since the eight actions involve identical questions of fact and law, centralization will be inherently more convenient for all of the parties and witnesses. Each of the eight cases will require substantial discovery efforts. The documents to be produced by LPI and HTS will be identical in each case and will be quite extensive. Further, depositions of representatives of both HTS and LPI will be the same in each case. Certainly, the inevitable duplication of effort would be eliminated by consolidating the eight actions in one district court.

In addition to requiring the same discovery, the eight actions will also trigger the same pretrial hearing and practice. The claims construction analysis culminating in a Markman hearing will be identical in each case. Further, each court would have to entertain identical summary judgment motions on the same factual issues and legal questions with the possibility of inconsistent decisions.

5

Though the Laughlin suits name over 40 HTS franchisees as defendants, HTS has agreed to indemnify all of its franchisees, and the franchisees have agreed to permit HTS to control the defense of the Laughlin suits. The same law firm will be representing HTS and its franchisees in all eight district court actions. Thus, HTS will put forth a unified defense. By centralizing the cases, the parties will not have to file and answer duplicate discovery, attend multiple depositions of the same witnesses or argue over the same discovery dispute issues. Further, there will then be the need for only one <u>Markman</u> hearing and only one summary judgment application.[4]

In addition, consolidation will enable HTS's founder and president, Ralph Venuto, to be more intimately involved in the eight actions. Approximately 30 months ago, Mr. Venuto was diagnosed with inoperable cancer of the prostate and lymphoids, which are aggressive forms of cancer, and given 24 months to live. <u>See</u> Declaration of Ralph Venuto, Sr., ¶ 11. Though Mr. Venuto has outlasted his physician's expectations, his participation and availability for the eight actions may become severely hampered. Mr. Venuto's physician has advised him to conserve his strength, and to not work past about 2 pm. Mr. Venuto is generally fatigued in the early afternoon.

Mr. Venuto designed and developed the HTS system, and is one of the persons at HTS most knowledgeable about the HTS method, the tanning industry, the competition, and the non-infringement and invalidity of the '333 patent. Mr. Venuto's participation will undoubtedly be essential to HTS's defense.

---

[4] Typically, a defendant in opposition to a transfer application may argue that as a party to only one or two of the actions at issue it would be inconvenienced by transfer to a single district court That issue does not exist in this situation since all of the Defendants in the Laughlin suits, primarily HTS's franchisees, have consented to this application and seek centralization. If LPI opposes this transfer application it cannot reasonably be on grounds of inconvenience. Without a transfer to a single district court, LPI will instead be litigating the same case in eight different states.

### 3. Centralization Will Promote The Just And Efficient Conduct Of This Litigation.

The transfer and consolidation of eight actions into one district will promote the just and efficient conduct of this litigation. See 28 U.S.C. § 1407; see also In re Mirtazapine Patent Litigation, 199 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002).

In addition to being more convenient for parties and witnesses, ordering a Section 1407 transfer and centralizing the District Court actions will promote the just and efficient conduct of the actions by (1) eliminating duplicative discovery, (2) preventing any inconsistent pre-trial rulings and (3) conserving the resources of the judiciary, counsel and the parties. In re Mirtazapine Patent Litigation, 199 F. Supp. 2d 1380 (J.P.M.L. 2002); In re Aimster Copyright Litigation, 177 F. Supp. 2d 1380, 1381 (J.P.M.L. 2001).

The Panel has recognized that proceeding with litigation of a patent dispute in multiple courts "would result in repetitive discovery and needless duplication of effort," In re Yarn Processing Patent Validity Litigation, 341 F. Supp. 376, 380 (J.P.M.L. 1972), and would risk inconsistent pretrial rulings. In re Western Elec. Co., Inc. Semiconductor Patent Litigation, 415 F. Supp. 378, 381 (J.P.M.L. 1976). By centralizing the actions in one district, discovery will be a streamlined and a single factual record will be created, presented and reviewed by one judge. In the specific context of the question of patent validity, centralization of discovery before one judge will result in an "informed decision on the merits . . . at a substantial savings of judicial time and resources." In re Molinaro/Catenzaro Patent Litigation, 380 F. Supp. 794, 795 (J.P.M.L. 1974). Moreover, centralization will eliminate any risk of inconsistent rulings on invalidity and non-infringement based on different factual records or different interpretations of the law.

7

A single centralized location would avoid having eight judges evaluating and deciding the same pretrial discovery and dispositive motions and the parties and witnesses engaging in identical pretrial discovery in eight different locations throughout the country.

### B. The District of New Jersey Is The Most Convenient Forum For The Prosecution Of These Actions.

A review of all relevant considerations dictate that the district court actions be transferred to the District of New Jersey. The reasons for centralizing the litigation in New Jersey are numerous:

(1)  HTS has its headquarters in Mt. Laurel, New Jersey;

(2)  HTS has agreed to indemnify all of its franchisees with regard to the Laughlin suits;

(3)  The HTS franchisees have agreed to permit HTS to control the defense of the Laughlin suits;

(4)  The witnesses for HTS, including but not limited to David Rahn and Ralph Venuto, and the documents supporting its claims and the defense of its claims are located in the Mt. Laurel, New Jersey location;

(5)  All witnesses, including but not limited to David Rahn, and documents related to LPI's alleged damages are located in Mt. Laurel, New Jersey;

(6)  One of the HTS witnesses most knowledgeable about the HTS system, the HTS method, the invalidity and non-infringement of the '333 patent, and the competition, Mr. Ralph Venuto, lives in New Jersey;

(7)  Mr. Ralph Venuto, HTS's founder and president, as well as the designer of the HTS system, lives in Blackwood, New Jersey, and has been diagnosed with aggressive forms of cancer;

(8)  On information and belief, approximately 47 of the HTS franchisees own and operate at least part of one or more salons outside of New Jersey and live in New Jersey;

(9)  The HTS system was designed and developed in New Jersey, and is manufactured in New Jersey;

(10) Of HTS's 132 store locations, 53 are in New Jersey;

(11) Another 45 salon locations are in close proximity to New Jersey (within about 20 miles of the Federal Courthouse in Camden) with 5 in Delaware, and 40 in eastern Pennsylvania, and another 15 salons located in New York;

(12) At present, HTS has 4 Florida locations (of which only 2 were named in the lawsuits filed in the Southern District of Florida); 3 Georgia locations (of which only 1 was named in the lawsuit file in the Northern District of Georgia); 6 Maryland locations (of which only 3 were named in the District of Maryland); and 6 Virginia locations (of which only 1 was named in the lawsuit filed in the Eastern District of Virginia);

(13) LPI is headquartered in Texas, where no action has been filed;

(14) HTS does not operate or franchise any salons in Texas nor in any location convenient to Texas;

(15) Since the courthouse of the District of New Jersey for the Camden Vicinage is less than 15 miles from Philadelphia International Airport, LPI and Dr. Laughlin would have easy access from Dallas, Texas to the Court; and [5]

(16) Edward McClain, a key third-party witness in the litigation, lives in New Jersey.

These factors favor consolidation to the District of New Jersey. See In re Amsted Indus., Inc. ERISA Litigation, 162 F. Supp. 2d 697 (J.P.M.L. 2001) (case transferred to the district of defendant's headquarters and location of witnesses and documents).[6]

---

[5] If the Court determines that the District of New Jersey is not a proper and convenient location, then alternatively the District of Delaware would be an appropriate location. LPI has brought the suit in Delaware relating to 4 of the 5 HTS salons in that state. Further, the Delaware courts are known for their sophistication in patent law and would be fully comfortable with handling the issues that would arise in this lawsuit. Moreover, Delaware, like New Jersey, offers a central location convenient to the Pennsylvania, New Jersey, Virginia and Maryland franchisees.

[6] Though LPI has not yet brought suit against the HTS franchisees located in New Jersey, or against HTS directly in its capacity as manufacturer of the HTS system, it could certainly avail itself of those forms of relief. Apparently, LPI's motivation for not taking such actions has been to deny HTS access to the forum most convenient to HTS. LPI's restraint, however, should not prejudice this Panel against its consideration of New Jersey as the proper location for consolidation of the eight actions. In the event that LPI does seek relief from the New Jersey HTS franchisees, or from HTS as the manufacturer of the HTS system, its only recourse would likely be with the United States District Court for the District of New Jersey.

LPI is no more inconvenienced by proceeding in New Jersey than it would be in any of the other neighboring locations, to which it has not hesitated to seek relief from through the Laughlin suits. LPI's proliferation of suits against HTS and its franchisees is a clear indication of its willingness to litigate and travel in the northeastern United States.

A significant portion of the litigation will focus on whether the HTS method infringes the '333 Patent. As a result, HTS's principal place of business in New Jersey, which is also the location of close to a majority of its salons, will be the focal point of the litigation. Certainly, the convenience of all parties, including LPI, and witnesses would be served by centralizing these actions in the District of New Jersey.

## IV. CONCLUSION

Based upon the foregoing, transfer to the District of New Jersey, Camden Vicinage, for the coordination and consolidation of pre-trial discovery is warranted and would promote the just and efficient conduct of these actions.

|  |  |
|---|---|
| Dated: August 9, 2002 | _____<br>LAURENCE S. SHTASEL<br>BLANK ROME COMISKY & McCAULEY LLP<br>JONATHAN M. KORN<br>Woodland Falls Corporate Park<br>210 Lake Drive East, Suite 200<br>Cherry Hill, New Jersey 08002<br>(856) 779-3600<br><br>One Logan Square<br>Philadelphia, Pennsylvania 19103<br>(215) 569-5500<br>Attorneys for Hollywood Tanning Systems, Inc. and the named franchisees (See Schedule attached to Motion as Exhibit "A") |